**Jerald W. BOITNOTT, Petitioner, Appellant,**

**v.**

**STATE of Minnesota, Respondent.**

**No. C8–01–1413.**

Supreme Court of Minnesota.

March 21, 2002.

Jerald W. Boitnott, Bayport, Pro Se.

Mike Hatch, Minnesota Attorney General, Kelly O'Neill Moller, Assistant Attorney General, St. Paul, Robert Raupp, Benton County Attorney, Foley, for Respondent.

OPINION

PAUL H. ANDERSON, Justice.

Jerald W. Boitnott appeals from an order of the Benton County District Court denying his petition for postconviction relief. Boitnott was convicted of multiple offenses, including first-degree felony murder. We affirmed Boitnott's conviction on direct appeal. Boitnott subsequently brought two petitions for postconviction relief. In each case, the postconviction court denied relief and we affirmed. In his present petition, Boitnott seeks the disclosure of certain grand jury exhibits. The postconviction court denied the motion on the grounds that Boitnott had not demonstrated the requisite good cause for disclosure of the exhibits. We affirm.

In 1988, petitioner Jerald W. Boitnott was convicted of first-degree felony murder, second-degree felony murder, second-degree intentional murder, and second-degree assault.[1] On direct appeal, we affirmed Boitnott's conviction. *State v. Boitnott,* 443 N.W.2d 527 (Minn.1989) (*Boitnott I*). More specifically, we held that the evidence was sufficient to support the conviction, Boitnott was not entitled to self-defense or accident jury instructions, the district court did not abuse its discretion in

---

1. A detailed statement of the facts surrounding the murder are set forth in *State v. Boit-* *nott,* 443 N.W.2d 527 (Minn.1989).

admitting a certain telephone conversation, and the state did not commit reversible misconduct in its closing argument. *Id.* at 532–34.

In 1994, Boitnott sued his trial counsel for legal malpractice, alleging that his counsel failed to advise him of an offer by the state to allow him to plead guilty to second-degree murder.[2] *Boitnott v. Cascarano,* No. C4–96–520, 1996 WL 523816, at *2 (Minn.App. Sept.17, 1996), *rev. denied* (Minn. Dec. 17, 1996), *cert. denied,* 522 U.S. 803, 118 S.Ct. 39, 139 L.Ed.2d 7 (1997). The district court granted summary judgment in favor of trial counsel and the court of appeals affirmed. *Id.* at *1. Neither court found any evidence that the state offered Boitnott a plea bargain involving second-degree murder. *Id.* at *3.

Boitnott filed his first petition for postconviction relief on February 12, 1997, alleging that his trial counsel provided ineffective assistance in (1) withdrawing a change of venue motion, (2) failing to communicate a plea offer, (3) failing to seek the removal of a certain juror, (4) neglecting to investigate the case, (5) failing to prepare for trial, and (6) failing to raise timely objections. The postconviction court declined to conduct an evidentiary hearing and denied relief in part based on the same documents submitted in the civil legal malpractice case. We affirmed, concluding that because Boitnott submitted no evidence showing that the state extended a plea offer for second-degree murder, we need not address the application of collateral estoppel. *Boitnott v. State,* 582 N.W.2d 243, 245 n. 2 (Minn.1998) (*Boitnott II*), *cert. denied,* 525 U.S. 1025, 119 S.Ct. 559, 142 L.Ed.2d 465 (1998).

In August 2000, Boitnott filed a second petition for postconviction relief, arguing, among other claims, that trial counsel was ineffective in failing to (1) communicate an in-chambers discussion with a certain juror or seek her removal for bias, (2) seek a change of venue, (3) investigate and prepare. an accident defense, and (4) make certain timely objections. Boitnott acknowledged that these claims were all raised in his first postconviction petition. He also asserted that he received ineffective assistance of appellate counsel on direct appeal. Boitnott claimed that he was entitled to have these claims addressed on their merits because neither the court of appeals nor this court addressed these claims in any prior proceeding.

The postconviction court denied Boitnott's petition, concluding that the claim regarding removal of the juror and counsel's cumulative errors constituted successive petitions for similar relief warranting summary denial under Minn.Stat. § 590.04, subd. 3 (2000). The court addressed the change of venue issue on the merits and concluded that Boitnott did not show that a fair trial was impossible in Benton County. The court also held that a *Schwartz*[3] hearing was unnecessary because there was no evidence of actual juror misconduct. Finally, the court rejected the claim that appellate counsel was ineffective in declining to raise ineffective assistance of trial counsel claims on which Boitnott would not prevail. We again affirmed the postconviction court. *Boitnott v. State,* 631 N.W.2d 362, 373 (Minn.2001) (*Boitnott III*).

On June 26, 2001, while Boitnott's appeal from the denial of his second postcon-

---

**2.** In his malpractice suit, Boitnott raised other issues unrelated to his murder case.

**3.** *Schwartz v. Minneapolis Suburban Bus Co.,* 258 Minn. 325, 104 N.W.2d 301 (Minn.1960).

The purpose of a *Schwartz* hearing is to investigate alleged juror misconduct. *See State v. Martin,* 614 N.W.2d 214, 225–26 (Minn.2000).

viction petition was pending in this court, Boitnott filed a motion in the Benton County District Court for disclosure of certain photographs that were used as exhibits before the grand jury. Boitnott argued that he had good cause to view the photographs because they were shown to the grand jury but not shown at trial. Boitnott asserted that he had never viewed the photographs and that his "delegates" should be permitted access to them to determine if they contained any discoverable evidence that was concealed from him at the time of his trial.

On July 6, 2001, the state filed a memorandum in opposition to Boitnott's motion for disclosure of grand jury information. The state argued that Boitnott had not demonstrated a particularized need or shown good cause as mandated by Minn. R.Crim. P. 18.05 and 18.08. More specifically, the state argued that Boitnott (1) had merely asserted without supporting evidence that some photographs may have been offered to the grand jury that were not offered at his trial, (2) had not indicated which photographs he sought disclosed, and (3) had not demonstrated how the production of these photographs would alter the outcome of his trial. Ten days later, the district court denied the motion on the grounds that Boitnott "ha[d] not demonstrated the requisite 'good cause' for disclosure of the exhibits used during the grand jury proceeding" as required by Minn. R.Crim. P. 18.05.

Boitnott appealed, again arguing that certain photographs were exhibited before the grand jury that were not exhibited at trial and requested to view the photographs because he had never seen them. Boitnott insisted that he had shown good cause for the disclosure of the photographs because he was serving a mandatory life sentence and needed to determine whether there was any exculpatory evidence contained in the photographs.

In August 2001, we issued an order stating that it was uncertain whether the district court's order was an adverse final order on a petition for postconviction relief. We directed the parties to submit an informal brief or legal memorandum addressing our authority to hear an appeal from an order denying a motion for access to grand jury exhibits. The parties submitted briefs and, on October 19, 2001, we issued an order stating that (1) Boitnott's motion was presumably an effort to establish that his conviction was obtained in violation of state or federal law, and (2) the district court's order denying disclosure of grand jury information was a "colorable final order" on a petition for postconviction relief.

█ We review a postconviction proceeding to determine only whether sufficient evidence exists to support the postconviction court's findings and will not disturb the court's decision absent an abuse of discretion. *Rainer v. State*, 566 N.W.2d 692, 695 (Minn.1997). A petitioner seeking postconviction relief has the burden of establishing, by a fair preponderance of the evidence, facts that would warrant relief. Minn.Stat. § 590.04, subd. 3. *See also State v. Rainer*, 502 N.W.2d 784, 787 (Minn.1993).

█ We begin by noting that a lengthy delay in filing a petition for postconviction relief may in itself provide a sufficient basis for affirming the denial of the petition when there has already been a direct appeal. *Sutherlin v. State*, 574 N.W.2d 428, 433 (Minn.1998) (holding that a 10 year delay in filing a petition alone may be sufficient grounds for dismissal). We have affirmed a denial of a petition for postconviction relief when the defendant waited 25 years after his conviction to file the petition. *Gaulke v. State*, 296 Minn. 487, 487,

206 N.W.2d 652, 652 (1973). Similarly, we have affirmed the denial of other petitions based on delay. *Black v. State*, 560 N.W.2d 83, 85 (Minn.1997) (affirming a denial in part because of an 18 year delay in filing a petition); *Fox v. State*, 474 N.W.2d 821, 826 (Minn.1991) (affirming a denial in part because of an 8–year delay in filing a petition). In light of the fact that Boitnott's third petition for postconviction relief comes nearly 12 years after we issued our decision in his direct appeal, we have the discretion to decline to address the merits of his claims. Nevertheless, we will proceed with further analysis of the claims raised in his petition.

 Once a petitioner directly appeals a conviction, all matters raised in that appeal or known at the time of appeal will not be considered by a postconviction court in a subsequent petition for relief. *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). *See also* Minn. Stat. § 509.04, subd. 3. This rule also applies if the petitioner knew or should have known about the issue at the time of appeal. *Black*, 560 N.W.2d at 85. Because Boitnott knew or should have known about his desire to view the photographs at the time of appeal, we conclude that his claim is procedurally barred under the *Knaffla* rule. However, an exception to the *Knaffla* rule provides that "[e]ven if the legal basis of the claim was reasonably available, this court may allow substantive review in limited situations when fairness so requires and when the petitioner did not 'deliberately and inexcusably' fail to raise the issue on direct appeal." *Russell v. State*, 562 N.W.2d 670, 672 (Minn.1997) (quoting *Roby v. State*, 531 N.W.2d 482, 484 (Minn.1995)). Accordingly, even though Boitnott's claims are untimely and procedurally barred, we choose to address the merits of his claims before the postconviction court.

Minn. R.Crim. P. 18.05, subd. 1, provides in part that the record of grand jury proceedings

> shall not be disclosed except to the court or prosecuting attorney or unless the court, upon motion by the defendant for good cause shown, or upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury, orders disclosure of the record or designated portions thereof to the defendant or defense counsel.

Minn. R.Crim. P. 18.05, subd. 1. The comment to rule 18.05, subd. 1, provides:

> Under Rule 18.05, subd. 1, the record may be disclosed to the court or to the prosecuting attorney, and to the defendant for good cause (This would include a "particularized need." *Dennis v. United States*, 384 U.S. 855, 869–70, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966).) * * *.

Minn. R.Crim. P. 18.05 cmt. Under rule 18.05, the burden is on the defendant to show good cause for the disclosure of grand jury information. Minn. R.Crim. P. 18.05, subd. 1. We have not previously defined "good cause" in the context of rule 18.05 or grand jury proceedings. The comment to rule 18.05, which is not binding on this court, indicates that a showing of good cause includes a showing of a particularized need. Minn. R.Crim. P. 18.05 cmt. Although *Dennis*, the case cited by the comment, does not define particularized need, the United States Supreme Court has defined the term to mean that (a) the material sought is needed to avoid a possible injustice in another judicial proceeding, (b) the need for disclosure is greater than the need for continued secrecy, and (c) the request is structured to cover only the material so needed. *Douglas Oil Co. v. Petrol Stops Northwest*, 441

U.S. 211, 222, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979).

■ Boitnott contends that he never viewed the grand jury photographic exhibits and would like to view them to determine if they contain exculpatory evidence. In response, the state contends that it has already disclosed the photographs to Boitnott and submits copies of an "Order Regarding Production of Grand Jury Transcript" and a letter to Boitnott which it claims indicate that the state disclosed investigative data to Boitnott. Boitnott has submitted nothing to refute the state's contention. Further, Boitnott has not submitted any affidavits or other evidence attesting that neither he nor his attorney ever viewed the exhibits. Because Boitnott has not done so, we have no basis for concluding that he or his attorney did not view the photographs. We conclude that Boitnott has not met his burden in demonstrating that he did not previously view the grand jury exhibits he now seeks to review.

■ Even if Boitnott had demonstrated that he or his attorney did not view the photographs, he must also demonstrate good cause to obtain disclosure of this information. Here, Boitnott has only asserted a general claim that the photographs might contain exculpatory evidence. A general claim that disclosure of grand jury transcripts will possibly reveal exculpatory evidence is not enough to demonstrate particularized need. *United Kingdom v. United States,* 238 F.3d 1312, 1321 (11th Cir.2001); *United States v. Rising,* 867 F.2d 1255, 1260 (10th Cir.1989) (*citing United States v. Short,* 671 F.2d 178 (6th Cir.1982), and *United States v. Edelson,* 581 F.2d 1290, 1291 (7th Cir. 1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1216, 59 L.Ed.2d 456 (1979)). Therefore, we conclude that, even assuming that Boitnott was denied an opportunity to view the

photographs presented to the grand jury, the postconviction court did not abuse its discretion in denying Boitnott's disclosure motion. We hold that the postconviction court did not err when it denied Boitnott's petition for postconviction relief.

Affirmed.

GILBERT, J., took no part in the consideration or decision of this case.